My name is Ron Ness. I represent Dennis Peterson on this appeal. Mr. Peterson was convicted after a trial in the District Court of four counts of production of child pornography, one count of use of a minor to assist in production of basically child pornography, one count of transportation of material involving child pornography, and one count of possession of that material. We've raised four separate areas that we feel the district court judge erred in. The first one I'd like to talk about actually is the last one in the brief, which is the sentencing issues. At sentencing, the district court judge applied three separate adjustments to Mr. Peterson's base offense level to reach the range on which he sentenced him. The court applied the supervisor enhancement as it related to counts one and two, the use of a computer, and particularly vulnerable victim adjustments. The issue on the first one, the supervisory enhancement, I guess it's hard to know exactly because this court wasn't there and the judge did not make any real findings based on his observation of the, I think it was SBC, testimony. But we do know that that particular individual, which was the basis for the enhancement, was an emancipated minor. Mr. Peterson was a teacher at the Squim Alternative High School. Which gives me don't the guidelines provide that a teacher is a supervisory person and the guidelines provide that or that he is. But it's not the only controlling consideration. And. Well, I was just wondering if if the guidelines provide that a teacher is a supervisory person, then how do you respond to that? Why does the trial judge have to make a special additional finding on it? Well, the guidelines provide that while a teacher is a supervisory official is not controlled. And the guidelines provide that the court is to take into consideration all the factors regarding the relationship between the two individuals. This was all covered in the present report. Yes. And there was a hearing and the opportunity to present any questions about the percentage report. Yes. Did you challenge this relationship? Yes. As not a supervisory. Yes. Yes. It was challenged at the time of sentencing through my pre-sentence memorandum that I provided to the court. And basically it was challenged on the fact that this individual SVD, as I indicated, was an emancipated minor. She had a child and she was living, I believe, at least part of the time in a shelter. And obviously the government and myself disagreed as to what that meant. I think that you can look at it a number of different ways. Obviously, our position is that even though this individual may have been 17, if you take into account the fact that she already was a mother, that she was emancipated. Then the other issue that the government talks about is, well, she needed money. Well, I don't think that makes any difference. So our position is that she that the supervisor enhancement, just because Mr. Peterson was a teacher, doesn't mean it automatically applies. Well, her being in necessitous circumstances might cut the other way, too, on her being a vulnerable, vulnerable victim. Well, that's what I was going to talk about, because the vulnerable victim enhancement applied. The judge applied that also. That's a two point enhancement. And so it was related to the same individual. So the judge applied the enhancement related to the same individual. What did the records show about the financial relations arrangements here? Was there money paid to there? There was no money paid that I'm aware of. The records showed that there were some promises made that if these pictures were posted on the Web site, which was, I believe, Lin site, that there could be money made. And there was promises made that other people had made up to five thousand dollars. But there's never any money to change hands that I'm aware of. And I know it was the promise on the Web site. Well, that there could be money made in that the there were other people that had made money off of posting on the Web site. New photos such that they were able to be paid as they always are in Web sites in terms of people who log on and provide their credit card and all that. But it didn't happen. But that was part of the evidence that as much as I can tell, I was not the trial attorney. But from reading the record, it certainly appeared that those promises were made by Mr. Pierce. And that type of conversation, I mean, that in and of itself cuts both ways to this vulnerable victim argument. Here's a young person who technically is under the age of 18, but realistically is acting as a person over the age of 18 being emancipated with a child who is willing to engage in activities that will make her some money. And so our position is that neither one of those enhancements should have applied. But the use of the computer enhancement, our argument is that it should not apply because the computer was not used to entice these young girls to participate in this. Wasn't there some evidence that he showed some pictures on the computer to illustrate what he wanted to do? Yes. Why wouldn't that constitute using the computer to entice? Well, our position is that what that the guideline adjustment is there for the individuals who use the computer, not to show somebody what may be on the computer, but to like chat rooms and e-mails and things like that. But to be honest with the court, I'm not so sure that that's a very strong argument in looking at the law. But that's our that was our position at the time of sentencing. If you want to get to those evidentiary questions, I presume. Well, I'm going to get to the first one I want to talk about is what I consider to be the most, I guess, important or it seems to be carry the most weight as far as we're concerned. And that is the allowance by the court of the pictures of Mr. Peterson's wife as evidence. There is no question that that is for for being material in my mind. Assuming that it would be prejudicial if it wasn't tied in with some crucial issue in the case. But what about the use of that evidence to identify the person who took the picture and who had control of the equipment and so on? And he could if without that picture of his wife in there, he could always say, well, some other dude did it. Well, you could say that, but you have to look at the total picture of what other evidence was there to prove that Mr. Peterson was the individual that undertook these activities. The government had the computers that were seized in his classroom, the computer that was seized at his home.  They had the zip disk. They're all they're all obtained from computers that Mr. Peterson obviously had control over at some point in time at school and at home. But they also had the testimony of the girls. They said, this is what he did. We recognize these pictures that were obtained off the computer that was seized. That's us. And he's the one that did it. So when the court makes the balancing test as to whether or not the probative value outweighs the prejudicial effect, it has to take into consideration the other evidence that is put forward to the jury to prove that point that the government is saying well, needs to be proved by the by the by the four B items could be. I mean, it could be so cumulative that it's just considered piling on or something. But that's not. No, I don't know the situation. No. This was a crucial piece of identifying evidence that showed beyond much doubt that this person who is before the jury is accused was also the person who was taking the picture. Well, I think it helped the government, but I don't think it was the crucial piece of evidence. In my mind, the crucial piece of evidence were the records obtained from the search and the testimony of the girls that tied those particular images to the computers that were seized from the school classroom that Mr. Peterson was a teacher in and from his home computer and from the zip disk, et cetera, et cetera. So then the question becomes, how does that relate in terms of its prejudicial effect to the probability value? I don't think there's any question, at least in my mind. Well, what was the what was so much more prejudicial about this particular picture of Mrs. Peterson than the ton of evidence that was already before the jury that was already pretty prejudicial? How did this particular picture, which was really used to identify the perpetrator rather than to inflame the jury? How was this prejudicial in the 504 sense? The 404B sense, because it's clear that the you're not allowed to present 404B evidence if you're doing it, if it's done to show propensity. The way I look at it, a jury is going to sit there and go, if he's willing to take pictures of his wife in these poses, then he must be one he must be willing to do other people. And that's propensity. And that's what has to be guarded against in these 404B. Well, if you believe the other evidence, she was already pretty sick, wasn't she? Well, yeah, I'm not denying that. But see, the thing is, if you don't need it. And in my opinion, the government didn't need it here, although their opinion obviously is different. Then why? Why have it? Well, did he stipulate that he's the photographer of these photos? He did not testify. Or otherwise provide some stipulation taking that issue out of the case. It seems to me it's hard to fault the government for wanting to prove its case. My position is that the government had more than ample evidence to prove their case outside of 404B evidence. And so with that. If the girls testified, I guess they did test. They did testify and they were clear in their testimony that there's a large number of pictures that these pictures were taken by Mr. Peterson and they were the people that were in the picture when they gave that testimony to the trial counsel for for Peterson. Cross examine them and try to throw some doubt on that. Well, you try again. But apparently it wasn't very effective. So I understand. But it's not like it's a stipulated fact. Yeah, it's not a stipulated fact. It's a challenged fact. And when the girls say he took the pictures, it's challenged in the courtroom. So it seems like the government, if it's got another arrow in its quiver, ought to be able to shoot it in front of the jury unless it's, you know, extremely unduly prejudicial. Well, that's my position is that the presidential effect of that particular evidence far outweighed its probably value. So I think it's a reasonable argument.  I think it's reasonable argument that it would show a propensity to these kinds of pictures of his wife. He must have taken those kids. I'm going to save the rest of my time for rebuttal. Thank you. Thank you, sir. Okay. Mr. Ness, we appreciate your argument. And now we hear from Catherine Worma, the Assistant U.S. Attorney. May it please the Court and counsel, I am Catherine Worma, Assistant United States Attorney representing the government in this case. Your Honors, I would like to address the points raised by counsel. I would be eager to answer any questions you might have. And I would like to emphasize one point that I think was not addressed sufficiently in the briefs. With respect to the points raised by Mr. Ness this morning, first, with respect to the use of the wife's photos, Your Honors, the issue in this case was the identity of the photographer. In fact, it was the main line of defense for Mr. Peterson to attack each one of these girls and to claim as his defense that the girls had conspired and concocted and had plotted this effort and planted these photographs so that the identity of the photographer was crucial to our case. The fact that Mr. Peterson's wife was seen in images with the exact same type of poses, that images were contained on the computers that had been taken with the very same camera that had been used to take pictures of the girls, and also that the images of his wife had been posted to exactly the same website that he had discussed with the girls and that he had, in fact, posted one of the girls' pictures on, all tie him, of course, are very relevant to the identity of the photographer. And finally, I would like to add that insofar as the argument is these were private and legal pictures of his wife, we have no disagreement with the legal part. We do with the private part. Dennis Peterson posted pornographic photos of his wife on a website. Those photographs were available to anyone going to that website. We know that the pictures he posted of one of these girls on that website elicited three dozen comments within a week to ten days after they had been posted by people all over the world with respect to his sexual activity. So for him to come before this court or any court and argue that those were private pictures of his wife, I think, stretches credulity to the limit. With respect to the sentencing issues raised by Mr. Peterson's counsel, as Your Honor indicated, the sentencing guidelines themselves explicitly reference a teacher as one sort of relationship that qualifies for that particular enhancement. The fact that one of these students was an emancipated minor in no way diminishes that teacher-student relationship. In fact, this girl and all of those girls were particularly vulnerable because there was testimony. They were in a school for at-risk kids. They were in an alternative school that you don't brag about being in. They were there because they were unwed mothers, because they had washed out of regular programs. Dennis Peterson was very well aware of that. He took advantage of that situation. He also trolled among the girls in his class, and there was testimony with respect to this. He was probing. He was exploring which girls were sexually active. You know, what kind of stuff have you done with your boyfriend? How old were these girls? These girls were 16 and 17. And he had known, and there was testimony with respect to this, the particular girl, the emancipated unwed mother, he had known that girl since she was 15, since she had had a baby at 15. Obviously, this is a girl who, in my mother's words, is of what is characterized as of loose morals. Dennis Peterson was looking for girls with loose morals because those were the more likely targets for him to engage in this sort of activity. They were particularly vulnerable. How do you view the supervisor enhancement for sentencing if the girl is emancipated? I don't. Would that have any effect on it if he's a teacher? None whatsoever, Your Honor, because the particular relationship there is in no way affected by her emancipation status. He has control over whether or not she graduates from high school simply by virtue of being her teacher, whether she is going to pass or fail the classes that she's taking from him. So even if she were married and living in a different household, she's still a student he's supervising? Correct, Your Honor. There's another enhancement for use of the computer? Use of the computer. I understand that from Judge Goodwin's comment earlier. Is there a third enhancement? No. Well, those were the three, the authority, the caretaker-authority relationship of being the teacher, the vulnerable victim adjustment and the use of the computer. What's the general standard for defining a vulnerable victim? That they are particularly susceptible to the sorts of activities, I believe, that were involved in the criminal conduct and that the perpetrator is exploiting those susceptibilities. So he said, for example, one example he's given is exploiting elderly people in fraud situations. If you're looking for that and contemplating that that is a factor that will make an individual more susceptible, Dennis Peterson, in this case, as I said, was looking for girls who were sexually active, who had little inhibition about that sort of thing. He was grooming them. He was looking for them. And he was exploiting that aspect of their life. Okay. How about the suppression issues about the search? This Court, Your Honor, I think has very properly decided in both the Lacey case and the Hay case, under very similar circumstances, that search warrants that authorize the seizure of categories of equipment, computers, in the child pornography context are proper. And the reasons for that is the particularity standard under the Fourth Amendment is to be judged by a standard of reasonableness. And that standard is affected by the circumstances of the case and the type of item to be seized. The circumstances in this case, the child pornography case, as in those cases, are such that we know a computer has been used. We know this equipment has been used. But as to where in the computer the evidence of that crime might be found is going to have to be carefully evaluated after the equipment is seized. Because the evidence of the crime may be records that are in themselves contraband, that are evidence of criminal activity, just the possession of which is criminal. The perpetrators of these types of crimes are not going to label that portion of the computer visibly. It may be hidden in some file in some way. Absolutely, Your Honor. That it takes some expertise to find it. Absolutely. And so given the circumstances, given the type of equipment that we're talking about, it is necessary to seize that equipment and do a search, an extensive search, with some level of expertise. In this type of case, is it customary to seize the whole drive? It is, Your Honor. It is what we're talking about. It is, Your Honor. And thank you, because that brings to mind the other point that I wanted to make today, that I wanted to make before I left and I think is not adequately developed in our brief and has not really been addressed by courts previously as in the Hay and Lacy case. And that is, everyone seems to look at these computers as repositories of records and that you're searching in them for records which will constitute evidence of the crime, when actually they are equally instrumentalities of the crime. These crimes cannot be committed without that type of equipment, without software that enables the user to create images or edit images. So the items need to be seized as well, simply as instrumentalities to prove that the offense was committed. Is there specialized software used for this, or is it just like the same kind of thing you would use to, or I might use to crop a family photo or something? Well, you need to have some sort of photo software in order to give the computer the capacity to contain images and work with images. And with respect to the instrumentality part, that is another matter in the record I wanted to bring to Your Honor's attention, as to how a computer might be used as an instrumentality in a way that you might not imagine and so which necessitates seizing the whole system. In a child pornography case, you might expect that what you're looking for, what you're primarily looking for, are images. But in fact, it wasn't just images that became important evidence in this case. There were documents with respect to hotmail registrations, with respect to hotmail addresses, and there was also a document which is reflected, excuse me, and discussed in testimony starting at page 603 of what is tabbed, Section J of the Government Supplemental Excerpts of Record. The testimony at that point is elicited from one of these girls in the classroom, and she is talking about an exhibit that was a printout from the, I believe, My Documents section of one of the computers in the classroom. And that reflects an incident in which Dennis Peterson, sitting at his desk at a keyboard, and the girl sitting at the other side of the table looking at a monitor, Dennis Peterson is typing in questions about what sorts of sexual poses she's willing to engage in, if she's willing to engage in hardcore things, if she's willing to have people pee on her, if she's willing to do this, if she's willing to do that. And so he's actually using that keyboard and the computer in this process of grooming her, engaging her, involving her in the production. It is an instrumentality of the crime as well as a repository of a record of the crime. Okay. Well, I have the government's issues well in hand from the briefing. I don't know if Judge Goodwin or Judge Lay have any questions on this, but if not, you don't necessarily need to use up all your time. Thank you, Your Honors. Okay. Mr. Ness. Thank you. I will be brief. The government on the issue of the pictures of the Mr. Peterson's wife, the government in their brief talk, I guess, about that to some degree. In one part, they say that the pictures were all similar and as such were needed to prove the identity. However, in my brief, I indicate that the court made a finding. It's in the excerpt from the record that there were individual pictures in the sample, which was of Mr. Peterson that were not substantially similar to any of the pictures of the alleged victims. So it's our position is that there are a number of pictures that were not similar. Well, let's say they had a right to introduce evidence of some similar pictures, but there also were some other pictures that weren't similar, that maybe there's a different balance on. Well, I don't think there's a prejudice from that, if that's the case. Well, I don't think, in my opinion, the prejudice is the same whether it's similar pictures or not similar pictures. The prejudice does not arise from the likeness of the poses. It arises from the fact, as I previously indicated, in my opinion, that that type of evidence is what's offered for propensity. I understand. But it's the government says, well, we're offering it to prove what we have to prove. There's an element there's an element of relevance and maybe an element. Absolutely. That's what the balancing test is all about. But in the government's brief on page 15, I think this is kind of critical to this area. The government indicates that forensic analysis of the computer hard drives and disk sees to the Peterson search warrants revealed hundreds of pornographic photos of S.V.D. J.S.C.B.E.P. and S.S.S., all consistent with the girl's statements. That's my point, is that the items that were seized were consistent with what the girls testified to. And the girls testified that it was Mr. Peterson who took those pictures. And that's why the prejudicial effect always appropriate value in my mind. Thank you. Thank you very much for your arguments. Well, arguing on both sides and the case will be submitted at this time with thanks to Ms. Worma and to Mr. Ness. We adjourn this one. It's submitted and we'll take a break for 15 minutes.
judges: Lay , Goodwin, Gould